**SO ORDERED.**
**SIGNED this 22nd day of April, 2013**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

/s/ Richard Stair Jr.
Richard Stair Jr.
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

In re

COMMONWEALTH GROUP-
MOCKSVILLE PARTNERS, LP

Debtor

Case No. 12-34319

## MEMORANDUM AND ORDER ON ADEQUACY OF
## AMENDED DISCLOSURE STATEMENT
## OF COMMONWEALTH GROUP-MOCKSVILLE PARTNERS, LP

This contested matter is before the court for a determination of the adequacy of the Amended Disclosure Statement of Commonwealth Group-Mocksville Partners, LP (Amended Disclosure Statement) filed by the Debtor on March 28, 2013, and on the Objection to the Adequacy of the Amended Disclosure Statement of Commonwealth Group-Mocksville, LP (Objection) filed on April 12, 2013, by PNC Bank, National Association, successor by merger to National City Bank, a national banking association f/k/a National City Bank of Kentucky (PNC Bank). PNC Bank contends that the Amended Disclosure Statement is deficient for the following reasons: (1) it fails to provide an explanation for the circumstances giving rise to the Chapter 11 bankruptcy filing; (2) it

fails to disclose potential payments to insiders and relationships to affiliates; (3) it fails to disclose or value potentially avoidable pre-petition transfers; (4) it fails to analyze the collectibility of accounts receivable; and (5) it does not disclose the disposition of pre-petition funds derived from property rents. PNC Bank also argues that the Amended Plan of Reorganization for Commonwealth Group-Mocksville Partners, LP (Amended Plan) filed by the Debtor on March 28, 2013, is facially unconfirmable, thus necessitating disapproval of the Amended Disclosure Statement.

Post-petition disclosure requirements and solicitation of acceptances or rejections of a Chapter 11 plan are governed by 11 U.S.C. § 1125, which states, in material part:

(a)  In this section—

>   (1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information; and

>   (2) "investor typical of holders of claims or interests of the relevant class" means investor having—

>>   (A) a claim or interest of the relevant class;

>>   (B) such a relationship with the debtor as the holders of other claims or interests of such class generally have; and

>>   (C) such ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have.

> (b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

11 U.S.C. § 1125 (2006). Additionally, pursuant to Rule 3016(b) of the Federal Rules of Bankruptcy Procedure, in Chapter 11 cases, "a disclosure statement under § 1125 of the Code . . . shall be filed with the plan[.]" FED. R. BANKR. P. 3016(b).

The determination of whether a disclosure statement provides creditors with adequate information is "'left essentially to the judicial discretion of the court' and . . . '[t]he information required will necessarily be governed by the circumstances of the case.'" *Mabey v. S.W. Elec. Power Co. (In re Cajun Elec. Power Co.)*, 150 F.3d 503, 518 (5th Cir. 1998) (quoting S. REP. No. 95-989, at 121 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5907). "Generally, a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization." *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990). Courts determine adequacy on a case-by-case basis, giving consideration to the following non-exhaustive factors:

> (1) the circumstances that gave rise to the filing of the bankruptcy petition; (2) a complete description of the available assets and their value; (3) the anticipated future of the debtor; (4) the source of the information provided in the disclosure statement; (5) a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement; (6) the condition and performance of the debtor while in Chapter 11; (7) information regarding claims against the estate; (8) a liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7; (9) the accounting and valuation methods used to produce the financial information in the disclosure statement; (10) information regarding the future management of the debtor, including the amount of compensation to be paid

3

>to any insiders, directors, and/or officers of the debtor; (11) a summary of the plan of reorganization; (12) an estimate of all administrative expenses, including attorneys' fees and accountants' fees; (13) the collectibility of any accounts receivable; (14) any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan; (15) information relevant to the risks being taken by the creditors and interest holders; (16) the actual or projected value that can be obtained from avoidable transfers; (17) the existence, likelihood and possible success of non-bankruptcy litigation; (18) the tax consequences of the plan; and (19) the relationship of the debtor with affiliates.

*In re Keisler*, 2009 WL 1851413, at *4, 2009 Bankr. LEXIS 1814, at *10-11 (Bankr. E.D. Tenn. June 29, 2009) (quoting *Cardinal Congregate I*, 121 B.R. at 765); *see also In re Microwave Prods. of Am.*, 100 B.R. 376, 377-78 (Bankr. W.D. Tenn. 1989). Nevertheless, "these factors are only a general 'yardstick' and need to be modified as the circumstances and size of each case warrant. 'It is . . . well understood that certain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.'" *In re Puff*, 2011 WL 2604759, at *4, 2011 Bankr. LEXIS 2445, at *10 (Bankr. N.D. Iowa June 30, 2011) (quoting *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001)).

"In short, a proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991); *see also In re Radco Props., Inc.*, 402 B.R. 666, 682 (Bankr. E.D.N.C. 2009) ("In determining the adequacy of information under [§] 1125(a)(1), the bankruptcy court reviews the information on a case by case basis. Adequate information was vaguely defined by Congress so that courts could view the circumstances of each particular case. In the end though, a proper disclosure statement should be clear and succinct.") (citations omitted). And while

> "it may, on occasion, be appropriate to consider issues at the disclosure hearing stage which could otherwise be raised at confirmation, if the described plan is fatally flawed so that confirmation would not be possible[,]" *Phoenix Petroleum Co.*, 278 B.R. at 394, . . . "[s]uch action is discretionary and must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing, and to insure that due process concerns are protected."

*Puff*, 2011 WL 2604759, at *5, 2011 Bankr. LEXIS 2445, at *13-14 (quoting *Cardinal Congregate I*, 121 B.R. at 762). "The purpose of the disclosure statement is not to assure acceptance or rejection of a plan, but to provide enough information to interested persons so they may make an informed choice between two alternatives." *In re U.S. Brass Corp.*, 194 B.R. 420, 423 (Bankr. E.D. Tex. 1996). "Generally, even where a 'disclosure statement could have included more information, . . . a disclosure statement need not be perfect and may be approved if the information is reasonable in the circumstances.'" *Puff*, 2011 WL 2604759, at *5, 2011 Bankr. LEXIS 2445, at *15 (quoting *In re Price Funeral Home*, 2008 WL 5225845, at *2, 2008 Bankr. LEXIS 3462, at *5 (Bankr. E.D.N.C. Dec. 12, 2008)).

After careful review of the Amended Disclosure Statement in conjunction with the Objection, the court finds that the Amended Disclosure Statement contains adequate information to allow creditors to accept or reject the Amended Plan filed by the Debtor on March 28, 2013. PNC Bank focuses on the aforementioned list of factors, arguing that the Debtor has not satisfied five such factors; however, as stated, those factors serve as a guideline for courts and not all factors will be present in each case. PNC Bank first argues that the Debtor has not satisfied the first factor because it has not explained "to any significant degree" the circumstances that gave rise to the bankruptcy filing. However, the Amended Disclosure Statement states that the bankruptcy case was filed to avoid foreclosure of its properties after PNC Bank declined to renew the Debtor's loan in

September 2012. This is a sufficient explanation as to why the Debtor filed for Chapter 11. Likewise, in answer to PNC Bank's argument that the Debtor has not satisfied the thirteenth factor by not mentioning within the Amended Disclosure Statement "Tenant Rents Due" that are listed by the Debtor in Schedule B, the court finds that Section IV of the Amended Disclosure Statement entitled "Funding of the Plan" provides creditors with sufficient disclosures concerning how the reorganized Debtor proposes to fund the Amended Plan.

PNC Bank also argues that the Debtor has not satisfied the tenth factor regarding information concerning compensation to be paid to the future management or the nineteenth factor which requires disclosure of the Debtor's relationship with affiliates. In support of this argument, PNC Bank states that it believes that management fees totaling $184,450.34 during the duration of the seven-year plan "may be going to an insider" and that the Debtor has not provided any details about the management company designated in the plan – Commonwealth Properties Group, LP – or whether this entity is an insider or affiliate of the Debtor. PNC Bank also argues that although the Debtor will be managed by Milton A. Turner, there is no disclosure regarding his salary. With respect to the future management of the reorganized Debtor, the Amended Disclosure Statement states that its management "is overseen by Milton A. Turner and Cathi Wingo, who will continue overseeing management of the Debtor. Commonwealth Properties Group, LP is the Debtor's management company." Additionally, Exhibit D attached to the Amended Disclosure Statement is the Debtor's Monthly Operating Report For the Period Ending February 28, 2013, which discloses that $3,204.03 is paid monthly for management fees. These figures, together with the management information contained in the Amended Disclosure Statement, provide creditors with enough

information to make a determination whether they are satisfied with the proposed management of the reorganized Debtor and is, thus, sufficient for the purposes of disclosure.

PNC Bank also argues that the sixteenth factor has not been satisfied, stating that the Debtor "appears to have made a number of potentially avoidable transfers in the year leading up to the bankruptcy filing" and that such transfers "would be of great interest to investors considering whether to contribute money to the Debtor." The court, however, finds that this issue is also better addressed at confirmation when it can be determined if such transfers occurred and, if so, whether they are avoidable. Similarly, the issue raised by PNC Bank concerning the disposition of rents received by the Debtor pre-petition that were not paid to PNC Bank is better left for confirmation. Written disclosure that the Debtor paid monies to other sources rather than PNC Bank is not an adequacy issue.

In summary, the issues raised by PNC Bank are confirmation issues rather than disclosure issues. The court also finds that the Amended Plan is not facially unconfirmable, and all issues will be addressed during confirmation. Accordingly, the Objection to the Adequacy of the Amended Disclosure Statement of Commonwealth Group-Mocksville Partners, LP filed by PNC Bank on April 12, 2013, is OVERRULED. The Amended Disclosure Statement of Commonwealth Group-Mocksville Partners, LP filed by the Debtor on March 28, 2013, will be approved by a separate order and a hearing on confirmation of the Amended Plan of Reorganization for Commonwealth Group-Mocksville Partners, LP will be set.

###